DeBlanc, J.
John Oarran is the holder of a note drawn on the 10th of May 1870, by L. H. Tabary, to his own order, by him endorsed, and secured by a conventional mortgage, which he — Tabary—gave on a *410 piece of property situated in this City, and which he afterwards sold to Aymes — his son-in-law — for fifteen hundred dollars. In settlement of that price and according to the recitals in the act of sale, Aymes paid in cash the sum of three hundred dollars, and assumed the payment of the note held by Garran, which — from the date of that assumption — was secured by the original mortgage granted by Tabary and by the privilege which resulted from said sale.
In a suit brought by one McNeil to annul the sale from Tabary to his son-in-law, on a charge of simulation and fraud, Tabary denied that charge and asserted the reality of the assailed transfer. He died, and we are informed by his widow’s counsel that — not wishing to keep in his name the property thus apparently sold, Aymes signed what he calls a counter-letter and had it recorded in the Conveyance office. That instrument is in these terms: “Know ye that I formally declare that the sale made tome by Henry Tabary, of New Orleans, on the 2d of December, 1875 * * is a meresimulation, and that no consideration was ever paid to said Tabary for said sale.” As soon as that declaration had been recorded, Mrs. Tabary as administratrix of her husband’s succession applied for an order to sell the property, which — in court — Tabary declared had passed from him to his son-in-law, and for a real consideration, and which — now and in a private instrument — the son-in-law formally declares has never ceased to belong to his vendor.
The order to sell was first allowed and then rescinded by the district judge. ‘ The widow appealed from the decree rescinding that order, and — considering the character of the pleadings — we were compelled to reverse that decree. The intended sale was proceeded with, and said property, which was appraised at one thousand dollars, was adjudicated to Mrs. Tabary, a party to the sale from her husband to Aymes, for six hundred and seventy-five dollars. This took place on the 30th of June 1877, and — on the 13th of July — she filed — in the second district court — • a tableau of the distribution which she proposes to make of the proceeds of that sale. In that tableau, she has allowed to herself — for a balance alleged to be due on the widow’s homestead — three hundred and twenty-eight dollars, aud to John Garran, on his note, one hundred and thirty-one dollars. The remaining portion of the price of the adjudication is applied to the payment of costs and fees.
This account is opposed by John Garran. Mrs. Tabary’s counsel insists that he lias — by the terms of his opposition — ratified the adjudication of the 30th of June. This is certainly a mistake: he does not claim the proceeds, or any share of the proceeds of that attempted sale: he contests its validity, denies its existence, and — apprehending the effects of the homologation of said account, he appeared in court for the sole purpose of disputing every item therein included; and — to use *411 his own words — prayed that it be stricken from the record of the succession. Ear from ratifying any sale, his manifest intention was to guard against and prevent that which, otherwise, might have been construed, and — in all probability — invoked as a tacit ratification on his part, that which he justly considered as an additional step taken to defeat the enforcement of his claim.
In his opposition, Carran contends that Mrs. Tabary owned — at the death of her husband — property worth fifteen hundred dollars ; that— besides — she has received in rents and from the company in which her husband’s life is assured, more than three hundred dollars, and — for these reasons — has no right to any allowance as a homestead.
The grounds of nullity which he urges against the adjudication of the 30th of June, are:
1. That the property sought to be sold did not belong to the succession of Tabary, but to Aymes, who assumed the payment of his— Carran’s — claim ; and
2. That, if it did belong to said succession, it could not legally have been, as it was, adjudicated for less than its appraised value.
The property alluded to was appraised at one thousand dollars, and —at the first offering — adjudicated to Mrs. Tabary for six hundred and seventy-five dollars. Does that adjudication constitute a valid sale?' In the exhaustive opinion which precedes the decree rendered by our learned brother of the district court, he says--and, in this, he is right— that administrators of successions have the same powers and are subject to the same duties and responsibilities as the curators of vacant estates. R. C. C. 1049 (1042). He, then, refers to article 1167 (1159), which provides — as to the sale of property belonging to vacant estates— “that it shall be made at public auction, to the last and highest bidder,”’ and justly remarks that the law — he doubtless meant that which he cited — is silent as to whether property thus sold shall or shall not bring its appraised value.
^Further on he says: “the debts of the succession must be paid, and — to pay them — the property of the succession must be sold without regard to the appraisement, and sales made under the decree of a court can not be rescinded for lesion beyond moiety.” R. C. C. 2594— (2572).
We are at a loss to imagine how the articles of the Code which authorize the annulling — on account of lesion — of existing and admitted sales, can have the most distant application to this case, wherein the main question to be decided, is whether — as asserted by one of the parties and denied by the other, the adjudication to,Mrs. Tabary constitutes a valid sale.
“It is now settled, we are told by the district judge, that a sale of *412 succession property to pay debts, may be validly made for less than two thirds of its appraisement,” and — to prove his assertion — -he refers to the 5th and 10th R. R. and to the 5th, 13thand 27th An. The decision in Valdere vs. Bird — -reported in 10 R. 398 — sustains his assertion. The sale referred to in 5 A. 438, was made subject’ to the Citizens’ Bank 'Stock, and the claim due upon the stock to the bank, payable according to its charter. In that case, from the tenor of the opinion delivered, *the court had to deal’with an exception, and — for that reason — declared that the application of the 990th article of the C. P. to the’ property sold was impracticable. Not a line of the decision to be found at page 508 of the 5th R. treats of the question now under discussion; but — in that book, at page 100 — that question is thus disposed of: “ It has been urged that the ordering of the sale for cash, implies that it must be sold for what it will bring. We presume that the judge a quo, in ordering the sale of the mortgaged property, understood and intended that it should be made according to law. There was no necessity for inserting in the judgments the condition, provided its appraised value be •obtained. The law itself fixes the amount which the sale must briDg, when made for cash, and it is clear that the property can not be adjudicated for cash under its appraised value.”
C. P. 990-=-991 — 992.
The di-trict judge thinks that- the decisions in 12th and 13th An. which we have adhered to, do not sustain the opinion delivered by us in Hermann & Vignes vs. Fontelieu. We held that — when succession property is offered for sale for cash, under an order of court, and even for the payment of debts, it must — at the first offering — bring at least its appraised value. In 12th A. the court said : the terms of sale of the property of the succession, accepted with the benefit of inventory, were for cash. The property — an immovable — did not bring the appraisement. There was, thei’efore, no sale which the purchaser could compel the tutrix to complete, although the property was sold to pay debts. In 13th A. the question presented for solution was thus stated by counsel : ■“has the creditor of an estate, whose debt opei’ates as a judicial mortgage, and is in a twelve-months bond executed by the deceased, a right to have property of the succession sold for cash at the first offering, unless it brings the amount of the appraisement on the inventory?” The court answered in the negative.
12 A. 368. 13 A. 439. 29 A. 505.
The district judge charges that we have virtually added seven words to the 1167th article of the Civil Code, so as to make it read that the sale therein referred, to shall be made at the appraised value of the property. This — on his part — is a mistake : we believe, as he does, that the article cited contains no such conditions ; but we are unable to *413 agree with him as to his construction of art. 990 of the Code of Practice. That article, which relates to the sale of property belonging to a vacant estate, provides that — “ on the application of the creditors or any credit- or of said estate, it shall be the duty of the several judges of Probatés, to cause * * so much of its property as is necessary to pay its debts, to be offered for sale and sold at public auction to the highest bidder for cash, if the creditors require it; and if — on thus offering said property for sale, the appraised value should not be bid and obtained,” then and only then can it be sold on credit and for icliat it will bring. “ The principles contained in that article, apply — this is expressly declared in said Code — to all successions accepted with benefit of inventory, whether the heirs are minors or of age, and to all successions administered by administrators.”
C. P. 990 — 991—992.
We have looked in vain for any provision in our Codes, which suggests the distinction insisted upon, and which — it is conceived — exists between the sale provoked by one of the creditors and that applied for by an administrator. The district judge supposes that “ when a creditor proceeds in that manner, the Legislator meant to force the adjudication up to the appraised value, in order to prevent the sacrifice of the rights of the creditors who take no action.” That supposition is rebutted by the fact that, whether the application to sell be made by one of the creditors, or by all the creditors, the property can not be sold — at the first offering — for less than its appraised value.
The provisions of the Civil C^de, which relate to the sale of the effects of successions administered by curators, far from conflicting with, justify the adjudications on which we rely:
“If, at the expiration of a year from the curator’s appointment, there be immovables * * which have not been sold, the judge is bound, at the request of the curator, to order the sale of the same at public auction * * at one 'and tivo years credit.”
C. C. 1169 (1202).
“ If, at that sale, two thirds of their estimated value be not offered, the sale shall be suspended, re-advertised at one, tioo and three years credit; but then the property must be sold for the price offered.”
C. 0. 1170 (1203).
If, at two years’ credit, at a sale made at the expiration of one year from the curator’s appointment, and which is necessarily ordered after the sales which can be made thirty days after said appraisement — O. C. 1164 (1155) 1165 (1156) — the property can not be sold for less than the appraisement made by experts appointed and sworn for that purpose, how reasonably infer that — when sold for cash — it may be sacrificed at the first offering; and why infer at all, in presence of the articles of the *414 •Code of Practice, which enjoin that, at that first offering, the appraised value must be bid and obtained ?
In Valdare vs. Bird, the court — ignoring its own decision — 5 R. 96— .and without referring to a single authority — asserted “ that it had been repeatedly held, that when a sale is made to pay debts, the property •may be sold for less than the appraisement.” If it had, the cases in which it was so held, have hot been reported. That court had previously and justly said: “the law itself fixes the amount which the sale must bring, when made for cash, and it is clear that the property can ■not be adjudicated for cash under its appraised value.” Whether it be •correct or incorrect, the decision in Carter vs. McManus — 15 A. 642— refers to personal and perishable property, and does not absolutely apply to this controversy. In “Succession of Weber” — 16 A. 420 — the court said: “the payment of the debts must be effected without regard to the appraisement, when the sale is ordered at the instance of the administrator; but — if ordered at the instance of the creditors — then recourse must be had to articles 990, 991 and 992 of the Code of Prac-tice.” That distinction is not authorized by any provision of our laws.
In deference to the district judge, whose opinions have always ■commanded the attention of this Court, we have once more read with ■care, and again considered the precedents on which he relies and those to which we adhere. The beaten path which we have followed leads to, the other by the law. This — now—is our unremovable conviction.
We would not attempt the difficult task of criticising the views of the eminent jurists who composed this Court, at the dates mentioned by ■the disTict judge: but at the pages of the Code to which they refer, ■what do we read? That — when sold for cash — the property of vacant estates, of all successions accepted with the benefit of inventory, whether the heirs are minors or of age. and of all successions under administration, can not — at the first offering — be sold for less than its appraised ■value : that, unless that value be bid and obtained, the property must be ■re-advertised for sale, and then sold on credit for what it will bring. We have copied, from the Code and from decisions of those jurists, the :refutation of what we consider as a mistaken interpretation.
III.
We admit that — as a general rule — a sale clothed with the judicial ¡sanction, can not be collaterally attacked: but — here, what are the facts? Tabary sold to Aymes a lot of ground already mortgaged to .secure the payment of the note held by Carran ; in the act of sale, Aymes assumed the payment of that note — and to that act — Mrs. Tabary was a party; it is signed by her. After the death of Tabary, Aymes prepared and caused to be recorded a private instrument, in which he declares that the sale from Tabary to him was a mere simulation: *415 thereupon, Mrs. Tabary procured from the probate court an order to sell, as belonging to the succession of her husband, the property thus returned by Aymes, and — at that sale — purchased said property. This ill-disguised attempt to defeat an acknowledged claim, can not be sanctioned. The declaration of Aymes neither did, nor could — to the detriment of Carran — destroy the title acquired by Aymes to the lot of ground; which both he and Tabary have subjected to the payment of the note held by Carran. 14 L. 44. 5 A. 228. The sole object of that transparent declaration was to avoid the otherwise unavoidable effects of the vendor’s privilege, resulting in favor of that creditor, from the sale made by Tabary to his son-in-law, and to subordinate that creditor’s claim to the homestead rights of the widow.
To obtain the order under which she pretends to have acquired the title, which — at the date of and previous to her application — she knew had passed from her husband, she deceived the court by a wilful misrepresentation ; that intended and practiced deception impairs — so far at least as she and Carran are concerned — the validity of the order which she then procured in utter disregard of the law, and of her own and her husband’s act. Under these circumstances, she forfeited the protection invariably and justly extended to those who honestly acquire under the regular decree of a competent court; and the adjudication to her of the lot belonging to her son-in-law, is an absolute nullity, which may be urged wherein and whenever it is relied on, by any of the parties to these fraudulent proceedings, to defeat the 'enforcement of an obligation given, ratified or acknowledged by them.
Whatever may be — as between themselves — the legal value of the sale from Tabary to Aymes, that sale — as to Carran — is not a simulation, and why? Because Aymes, Tabary and his wife have all acknowledged» out of court and in a notarial act, in court and by placing it on the tableau filed by the latter, that the note held by Carran, which constitutes the four fifths of the consideration of said sale, was and is still due by Aymes and the succession of his father-in-law. Mrs. Tabary was a party to that sale, and — to her own knowledge — the adjudication to her of the property sold to Aymes anil mortgaged to Carran, was — as to that creditor, the sale of Aymes’ property and, therefore, an absolute nullity. C. C. 2452 (2427).
The declaration of Aymes, made and recorded after the death of Tabary is not a counter-letter. If it were, counter-letters can have no effect against creditors, for — -as said by the Court in Stewart vs. Newton — -“While parties to a simulated contract may be compelled, inter se, to treat it as a nullity on the production of such an instrument, still the law is careful to guard the interest of third parties against any injury from such a dissolution of an apparent title. Had it failed to do so, *416 public confidence would have been destroyed, and public credit paralyzed. If a private counter-letter could, at any time and as to all the world, defeat the most formal title in the archives of the Recorder’s offioe, their authentic acts would be mockeries, and registry offices pitfalls for the unwary.”
R. O. O. 2239 (2236) — 12 A. 622.
In the oase entitled “Succession of Tabary,” and reported in the 30th A. p. 188, being under the impression that Oarran had excepted to the introduction of evidence, the sole object of which was to add a piece of property to the succession of his debtor, to swell instead of diminishing the means of payment of his debt, we said — that Aymes’ declaration that the sale from Tabary to him was a simulation should have been secured in evidence by the lower Court. The object of that evidence is now fully declared: it is to outrank and defeat the creditor’s claim. That disclosure dispels the mistaken impression which inevitably led us from an error of facts to an error of law.
Were it true — as contended by Mrs. Tabary’s counsel — that the unsworn declaration of Aymes can have — as to third parties — the effect which a counter-letter has in regard to simulated contracts and as between the parties to such contracts — were it admitted that said declaration can destroy an existing title, transfer the ownership and possession of property, wipe out every right resting on that title, or subordinate them to a resuscitated title and to resuscitated rights — still, the fact remains that there was no sale from the succession of Tabary to his widow — that, as there was no sale, there are no proceeds to be distributed, and that, even if the adjudication to Mrs. Tabary for less than the appraised value of the property, could — under the peculiar and exceptional circumstances already recited — be considered but as a voidable sale, which can not be collaterally attacked, we would — nevertheless— feel constrained to delay — until our decision in another suit, tried in and submitted to this court, between the same parties and in regard to the same lot of ground — the proposed distribution of the insufficient and as yet unrealized price, a fraction of which is — on paper — tendered to the creditor ; but which — due as it is by one who seems determined to defeat his claim, he might not easily realize, if he concluded to accept it. But the adjudication to Mrs. Tabary is a manifest nullity, and as she— the oply party interested in maintaining it — is now in court, urging it against the only party interested, in opposing it; this fruitless and expensivo litigation must be closed.
It is — therefore—.ordered, adjudged and decreed that the judgment appealed from is avoided and reversed.
It is further ordered, adjudged and decreed that the application filed by Mrs. Widow Henry Tabary, on the 13th of July 1877, for the *417 approyal and homologation of the account presented by her as administratrix of the succession of her husband, is now dismissed at her costs in both courts.